AUTORIDAD DE LAS FUENTES FLUVIALES DE PUERTO RICO, recurrente, *v.* JUNTA DE RELACIONES DEL TRABAJO DE PUERTO RICO, demandado.

*Número:* O-72-104      *Resuelto:* 28 de septiembre de 1973

*José Vilá Ruiz, Luis F. Candal, Luis M. Rivera Pérez, Marcelino Delgado Medina* y *Rafael Buscaglia Guillermety,* abogados de la recurrente; *Gilberto Gierbolini Ortiz, Procurador General,* y *Miguel A. Rivera Arroyo, José E. Rodríguez Rosaly,* abogados de la Junta de Relaciones del Trabajo, abogados del demandado; *Rosario, Ortiz Colón & Canales,* abogados de la UTIER.

PER CURIAM: Nos toca examinar el convenio colectivo vigente entre la Autoridad de las Fuentes Fluviales (AFF) y la Unión de Trabajadores de la Industria Eléctrica y Riego de Puerto Rico (UTIER), y resolver si bajo el convenio existe o no obligación de los empleados a trabajar fuera o en exceso de su horario regular de trabajo bajo ciertas circunstancias

de emergencia. Esta controversia fue planteada ante la Junta de Relaciones del Trabajo de Puerto Rico mediante la expedición de querella, basada en un cargo presentado por la AFF contra la unión, imputándole una violación del Art. 8(2)(a) de la Ley de Relaciones del Trabajo, 29 L.P.R.A. sec. 69(2) (a). En la querella se alegó, entre otras cosas, que la unión querellada, en violación del convenio colectivo vigente, apoyó, alentó y sostuvo la negativa de los empleados de la AFF a trabajar horas extras cuando la necesidad del servicio así lo exigía. Previo los trámites de rigor en estos casos—celebración de audiencias, presentación del informe del Oficial Examinador, etc.—la Junta concluyó que no hay nada en el convenio que obligue a los empleados unionados a trabajar horas extraordinarias. En consecuencia, la Junta dictó Decisión y Orden desestimando la querella. La AFF acude ante nos en recurso para revisar.

En cuanto al cargo contra la unión al efecto de que ésta "apoyó, alentó y sostuvo" la negativa de los empleados a trabajar horas extras, "cuando la necesidad del servicio así lo exigía", el Oficial Examinador en sus conclusiones de hecho hace un recuento, basado en la evidencia testifical recibida, de la necesidad que tiene la AFF de darle mantenimiento de emergencia al equipo; que debido a la naturaleza de trabajo, la AFF se ha visto obligada a requerir a sus empleados que trabajen cierto número de horas extraordinarias y que, en cuanto a esto, las relaciones fueron siempre cordiales, hasta que en octubre de 1969 los empleados de sub-estaciones rehusaron trabajar después de sus jornadas ordinarias; en enero de 1970 la AFF no pudo obtener que sus empleados de mantenimiento permanecieran después de las 2:45 P.M. en una planta hydro-eléctrica ubicada en Río Blanco; y como resultado de la negativa de sus empleados, la AFF se vio obligada a descontinuar la prestación de alguno de sus servicios. Concluyó el Examinador que los empleados rehusaban hacer el trabajo nocturno en horas extraordinarias, conducta ésta que

fue el resultado de la posición asumida por la Unión y comunicada a sus miembros a quienes se les estimuló y respaldó en su negativa a dar cumplimiento al convenio. El Oficial Examinador recomendó finalmente a la Junta que declarara a UTIER incursa en una violación del Art. 8(2) (a) de la ley, dictara orden de cese y desista en su contra, y convocara una audiencia para determinar si la AFF sufrió daños como resultado de la conducta de la Unión y, en caso afirmativo, ordenarle a ésta el resarcimiento de los mismos.

En sus conclusiones sobre los hechos, la Junta prácticamente adoptó las del Oficial Examinador antes reseñadas. Se transcriben a continuación:

"1. La Querellante opera un número de subestaciones, que sirven para distribuir energía eléctrica al país. El equipo en las referidas subestaciones requiere mantenimiento ordinario y reparaciones de emergencia.

2. Debido a la naturaleza del trabajo, el patrono se ve obligado a requerir a sus empleados que trabajen cierto número de horas extraordinarias. Generalmente estas labores se habían realizado con toda normalidad.

3. En el mes de octubre de 1969, y posteriormente, varios empleados de la Querellada [sic] se negaron a realizar no sólo labores de mantenimiento sino reparaciones de emergencia. La prueba demostró claramente la participación de la Querellada en la negativa a trabajar mediante la participación del Sr. Luis Laboy, líder del Capítulo de San Juan."

Básicamente la controversia se ha reducido a una de derecho respecto a lo que autoriza o no el convenio entre las partes. El convenio es el que fue firmado por la UTIER y por la AFF en 31 de julio de 1968 para regir sus relaciones desde el 1ro. de julio de 1967 hasta el 30 de junio de 1970. Vale dejar aclarado que ni la Junta ni la UTIER invocan el derecho constitucional de todo trabajador, consagrado en nuestra Carta de Derechos, (¹) a escoger libremente su ocupación y a una jor-

_____
(¹) Art. II, Sec. 16, que dispone:
"Se reconoce el derecho de todo trabajador a escoger libremente su

nada ordinaria que no exceda de ocho horas diarias, como una prohibición absoluta de cláusulas en un convenio colectivo que reconozcan la obligación contractual de trabajar horas extras bajo ciertas circunstancias. Claramente no lo es. La intención de la Convención Constituyente no fue prohibir el trabajo extra, sino legalizarlo. En su Informe, la Comisión de Carta de Derechos se expresó así sobre este aspecto:

*"Jornada de ocho horas.* Se establece una jornada diaria no mayor de ocho horas. Esto es el máximo. Podría trabajarse jornadas menores. La comisión comprende que puede haber circunstancias especiales o de emergencia que justifiquen, en determinadas ocasiones, una labor más intensa. La determinación de tales circunstancias queda en manos de la [Asamblea] Legislativa, sujeta a que el trabajo adicional sea pagado con recargo. Se establece, sin embargo, el principio de que bajo circunstancias normales el día de trabajo no exceda de ocho horas." *Diario de Sesiones de la Convención Constituyente de Puerto Rico,* Ed. Equity de 1961, Tomo IV, pág. 2574.

Aunque en su Decisión y Orden la Junta expresó que las normas de derecho laboral en Puerto Rico han indicado una clara intención legislativa y constitucional de limitar la jornada laboral de trabajo a ocho horas diarias, la determinación que finalmente hizo descansó no en esas expresiones, sino en base a que la obligación de trabajar fuera del horario regular no fue pactada expresamente o en forma tal que pudiese interpretarse que esa fuera la intención de las partes.

El convenio contiene tres cláusulas básicas sobre tiempo extra. Las copiamos a continuación:

"Artículo VI

Sección 7.—La Autoridad podrá designar trabajadores de

ocupación y a renunciar a ella, a recibir igual paga por igual trabajo, a un salario mínimo razonable, a protección ontra riesgos para su salud o integridad personal en su trabajo o empleo, y a una jornada ordinaria que no exceda de ocho horas de trabajo. Sólo podrá trabajarse en exceso de este límite diario, mediante compensación extraordinaria que nunca será menor de una vez y media el tipo de salario ordinario, según se disponga por ley."

emergencia por un período que no excederá de 90 días calendarios. Si la emergencia excediera el término fijado de 90 días calendarios, a la expiración de dicho término el trabajador será sustituido por un candidato seleccionado del Registro de Temporeros, si lo hubiere. De no haber trabajadores temporeros disponibles en el registro de temporeros, se extenderá el nombramiento del trabajador de emergencia por un período adicional que no excederá de 90 días calendarios.

A los fines de esta disposición, se entiende por emergencia un desastre provocado por la naturaleza o una irregularidad interna en las propiedades de la Autoridad que interrumpan o pongan en peligro inminente el sistema de energía eléctrica.

. . . . . . . .

Artículo XXI

Sección 4.—En caso de que el trabajo de emergencia se prolongue a las horas de su jornada regular de trabajo, al trabajador regular o temporero se le pagará las horas regulares de su jornada de trabajo que le correspondía descansar de acuerdo con esta licencia especial, a doble el tipo regular de salario, incluída la paga básica o la paga concedida, y las dietas según están establecidas cuando correspondieren.

. . . . . . . .

Artículo XLIV—Disposiciones Generales

Sección 8.—Cuando haya que trabajar tiempo extra se utilizará el personal que esté disponible de la Sección donde se vaya a realizar el trabajo y de no haber personal disponible se podrá utilizar. personal de otra Sección que pueda realizar el trabajo."

El convenio contiene, además, disposiciones expresas que establecen el procedimiento disciplinario que habrá de regir el trámite de controversias y casos de disciplina. El Art. XLI del convenio bajo el título "Procedimiento Disciplinario" dispone *inter alia*:

"Sección 1.—En *todos* los casos de amonestación, medida disciplinaria o suspensión de empleo y sueldo de un trabajador deberán formularse y notificarse por el Supervisor los cargos correspondientes, que estarán basados en las Normas de Disciplina fechadas 1ro. de enero de 1950, versión al castellano. Las Partes convienen revisar de mutuo acuerdo dichas Normas y una vez

revisadas y puestas al día no podrán cambiarse, alterarse o enmendarse a menos que medie el consentimiento de las Partes."

Como se podrá observar, la citada cláusula del convenio hace referencia expresa a las Normas de Disciplina fechadas 1ro. de enero de 1950. Según surge de los autos, estas normas no han sido revisadas por las partes y para la fecha de los hechos que dieron base a la querella estaba vigente la Regla de Conducta Núm. 16 que lee así:

"Negarse a cumplir órdenes para ejecutar trabajos de urgencia fuera de las horas regulares a menos que se expusieren razones válidas no está permitido."

Las disposiciones del convenio establecen el tipo de personal que podrá designar la AFF para realizar trabajos de emergencia; define este término como un desastre provocado por la naturaleza o una irregularidad interna en las propiedades de la Autoridad que interrumpan o pongan en peligro inminente el sistema de energía eléctrica y en la Sec. 8 del Art. XLIV establece el derecho de la AFF a utilizar el "personal que esté disponible" cuando haya que trabajar tiempo extra.

Es cierto que las citadas disposiciones del convenio, consideradas aisladamente, no establecen expresamente el derecho reclamado por la AFF a requerir personal para rendir labor fuera del horario regular de trabajo, ya que no se define lo que se entiende por "personal que esté disponible" para trabajar. Pero esta aparente imprecisión queda satisfactoriamente explicada si se consideran dichas disposiciones conjuntamente con la cláusula del convenio que establece el procedimiento disciplinario, la cual hace referencia expresa a las Normas de Disciplina vigentes, y específicamente la Regla de Conducta Núm. 16.

Concurrimos con la peticionaria que al referirse la Sec. 8 del Art. XLIV del convenio al "personal que esté disponible de la Sección, etc." se refiere claramente a empleados que en violación de la Regla de Conducta Núm. 16, ante, no "expu-

siere razones válidas" para negarse a trabajar. Sólo podría la Autoridad utilizar personal de otra sección si los trabajadores de la sección donde se vaya a realizar el trabajo tuvieren razones válidas para negarse a trabajar. Resolvemos, por tanto, que el acuerdo de trabajar fuera del horario regular fue pactado por las partes en el convenio.

En consecuencia, *se revocará la Decisión y Orden objeto de este recurso y, en su lugar, se dictará sentencia declarando a la Unión de Trabajadores de la Industria Eléctrica y Riego de Puerto Rico incursa en una violación del Art. 8(2)(a) de la Ley de Relaciones del Trabajo, ordenándole: (a) que cese y desista de violar el convenio colectivo suscrito con la Autoridad de las Fuentes Fluviales de Puerto Rico; (b) que notifique a los miembros de la Unión de los términos de la sentencia; y (c) notifique al Presidente de la Junta de Relaciones del Trabajo de Puerto Rico, dentro del término de treinta (30) días de enviado el mandato, de las providencias tomadas por la Unión para cumplir con los términos de la sentencia.*